# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ROBERT J. DEVEREAUX, JR.,** individually and on behalf of all others similarly situated, | ) ) ) |
| **Plaintiff,** | ) ) |
| | )  **No. 10 C 7121** |
| v. | ) ) |
| | )  **Judge Joan H. Lefkow** |
| **EUGENE "GENE" MOORE, RECORDER OF DEEDS OF COOK COUNTY,** both as the Recorder of Deeds of Cook County and on behalf of all other Recorder of Deeds in each and every other county in the State of Illinois, and **COOK COUNTY,** a body politic, | ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## OPINION AND ORDER

Robert J. Devereaux, Jr., individually and on behalf of all others similarly situated, filed suit against Eugene "Gene" Moore, the Recorder of Deeds of Cook County ("Recorder") and Cook County (collectively, "defendants"), alleging federal due process and equal protection violations and state law conversion claims arising from the Recorder's collection of certain charges associated with the recording of real estate in Cook County. Defendants have moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7). For the reasons that follow, defendants' motion to dismiss [#14] is granted.

# BACKGROUND[1]

On April 5, 2010, Devereaux recorded a deed with the Recorder. In order to do so, he had to pay certain charges, including a Rental Housing Support Program surcharge of $10 ("surcharge"), a Geographic Information System fee of $15 ("GIS fee"), and a document storage fee of $3 ("storage fee"). Devereaux paid these charges under protest.

The charges Devereaux paid are authorized by statute. 55 Ill. Comp. Stat. 5/3-5018. In relevant part, the statute reads:

> The county board of any county may provide for an additional charge of $3 for filing every instrument, paper, or notice for record, (1) in order to defray the cost of converting the county recorder's document storage system to computers or micrographics and (2) in order to defray the cost of providing access to records through the global information system known as the Internet.
>
> A special fund shall be set up by the treasurer of the county and such funds collected pursuant to Public Act 83-1321 shall be used (1) for a document storage system to provide the equipment, materials and necessary expenses incurred to help defray the costs of implementing and maintaining such a document records system and (2) for a system to provide electronic access to those records.
>
> The county board of any county that provides and maintains a countywide map through a Geographic Information System (GIS) may provide for an additional charge of $3[2] for filing every instrument, paper, or notice for record (1) in order to defray the cost of implementing or maintaining the county's Geographic Information System and (2) in order to defray the cost of providing electronic access to the county's Geographic Information System records. Of that amount, $2 must be deposited into a special fund set up by the treasurer of the county, and any moneys collected pursuant to this amendatory Act of the 91st General Assembly and deposited into that fund must be used solely for the equipment, materials, and necessary expenses incurred in implementing and maintaining a Geographic Information System and in order to defray the cost of providing electronic access to the county's

---

[1] The facts recounted in this section are taken from the complaint and are presumed true for purposes of resolving the pending motion.
[2] Defendants represent that the GIS fee has been increased to $15 by Cook County under its home-rule power.

> Geographic Information System records. The remaining $1 must be deposited into the recorder's special funds created under Section 3-5005.4. The recorder may, in his or her discretion, use moneys in the funds created under Section 3-5005.4 to defray the cost of implementing or maintaining the county's Geographic Information System and to defray the cost of providing electronic access to the county's Geographic Information System records.
>
> The recorder shall collect a $10 Rental Housing Support Program State surcharge for the recordation of any real estate-related document. . . .
>
> . . . .
>
> One dollar of each surcharge shall be retained by the county in which it was collected. This dollar shall be deposited into the county's general revenue fund. Fifty cents of that amount shall be used for the costs of administering the Rental Housing Support Program State surcharge and any other lawful expenditures for the operation of the office of the recorder and may not be appropriated or expended for any other purpose. The amounts available to the recorder for expenditure from the surcharge shall not offset or reduce any other county appropriations or funding for the office of the recorder.
>
> . . . Each recorder shall submit $9 of each surcharge collected in the preceding month to the Department of Revenue and the Department shall deposit these amounts in the Rental Housing Support Program Fund. Subject to appropriation, amounts in the Fund may be expended only for the purpose of funding and administering the Rental Housing Support Program.

*Id.*

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the party asserting jurisdiction. *United Phosphorus, Ltd*. v. *Angus Chem. Co*., 322 F.3d 942, 946 (7th Cir. 2003). In determining whether subject matter jurisdiction exists, the court must accept all well-pleaded facts alleged in the complaint and draw all

reasonable inferences from those facts in the plaintiff's favor. *Sapperstein* v. *Hager*, 188 F.3d 852, 855 (7th Cir. 1999).

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## DISCUSSION

### I. Rule 12(b)(1)

Defendants argue that the court lacks subject matter jurisdiction over Devereaux's complaint because it is barred by the Tax Injunction Act, 28 U.S.C. § 1341. The Tax Injunction Act provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Tax

4

Injunction Act "does not limit any substantive rights to enjoin a state tax but requires only that they be enforced in a state court rather than a federal court." *Empress Casino Joliet Corp.* v. *Balmoral Racing Club, Inc.*, --- F.3d ----, 2011 WL 2652201, at *1 (7th Cir. July 8, 2011) (en banc). It applies only to taxes and not to every transfer of money to the government. *Kathrein* v. *City of Evanston, Ill.*, 636 F.3d 906, 911 (7th Cir. 2011) .

The parties dispute whether the charges complained of are fees or taxes. In his complaint, Devereaux characterizes the payments he made on April 5, 2010 alternatively as both fees and taxes. *See* Compl. ¶ 4 ("[Moore] collected certain fees from Plaintiff . . . ."); *id.* ¶ 11 ("[The surcharge] has been improperly turned from a tax to a fee . . . ."); *id.* ¶ 13 ("The statutes in question . . . constitute an unreasonable and arbitrary conversion of fees paid for a service into a general tax to be used for the benefit of the general population of the State of Illinois."). Defendants argue that, accepting the characterization of the charges as taxes, the Tax Injunction Act bars Devereaux's suit. Devereaux, on the other hand, maintains that his complaint only addresses fees, not taxes. Neither party's characterization of the charges controls, however. *See Kathrein*, 636 F.3d at 912 (the enacting government and the defendants characterized a charge as a "Demolition Tax," but the court nonetheless found it to be a regulatory fee). Instead, the court must determine whether the charge is a fee or a tax. *See Empress Casino*, 2011 WL 2652201, at *5 ("[W]hat is a 'tax' for purposes of the Tax Injunction Act is a question of federal rather than state law[.]")

To make this determination, the court should consider whether the charge is designed to generate revenue (a tax), or to "punish . . . rather than to generate revenue" or "to compensate for a service that the state provides to the persons or firms on whom or

on which the exaction falls" (a fee). *Id.* The structure and purpose of the charge are important considerations in distinguishing whether a charge is a tax or a fee. *Kathrein*, 636 F.3d at 912–13; *Hager* v. *City of W. Peoria*, 84 F.3d 865, 870–71 (7th Cir. 1996). "If the fee is a reasonable estimate of the cost imposed by the person required to pay the fee, then it is a user fee and is within the municipality's regulatory power." *Diginet, Inc.* v. *W. Union ATS, Inc.*, 958 F.2d 1388, 1399 (7th Cir. 1992); *see also Kathrein*, 636 F.3d at 911 ("A user fee generates only enough revenue to defray the costs of providing the service to which the user fee is attached.").[3] On the other hand, "[i]f [a charge] is calculated not just to recover a cost imposed on the municipality or its residents but to generate revenues that the municipality can use to offset unrelated costs or confer unrelated benefits, it is a tax, whatever its nominal designation." *Diginet, Inc.*, 958 F.2d at 1399; *see also Kathrein*, 636 F.3d at 911 (a tax is a charge imposed "to raise the revenue a government needs in order to function").

Devereaux complains of three different charges: the surcharge, storage fee, and GIS fee. The storage fee and GIS fee are explicitly intended to defray costs associated with operating and maintaining the recording system and not to offset unrelated costs. The statute states that the storage fee is intended to "defray the costs of implementing and maintaining such a document records system," "to defray the cost of converting the

---

[3] *Kathrein* sets out four categories of charges that constitute fees: user fees, regulatory devices, compensation charges, and market exchanges. 636 F.3d at 911. A regulatory device "directly regulates behavior by means of financial incentives," typically to deter certain behavior. *Id.* A compensation charge is one "imposed upon those who cause a negative externality, and its proceeds are used to compensate those affected by the externality." *Id.* A market exchange is a "payment to the government that is part of an exchange in which the government acts as if it were 'any ordinary market participant.'" *Id.* The Seventh Circuit's en banc decision in *Empress Casino* suggests that charges are either a fine, user fee, or a tax, however. *See Empress Casino*, 2011 WL 2652201, at *15 (Sykes, J., dissenting). The court's analysis will follow *Empress Casino*'s framework, although the outcome would be the same using *Kathrein*'s four categories of fees.

county recorder's document storage system to computers or micrographics," and to defray the cost of providing electronic access to those records. 55 Ill. Comp. Stat. 5/3-5018. The GIS fee's purpose is also outlined in the statute: to defray the cost of maintaining a geographic information system and providing electronic access to it. *Id*. Since these charges were intended to cover the costs of providing the specific services with which they were connected, they are properly considered fees. *See Empress Casino*, 2011 WL 2652201, at *5 (collecting cases of exactions held to be fees, including fees for permits to use certain streets and fees on owners of vehicles to fund compulsory accident compensation); *id.* at *10 ("The fees [are] to pay for services to the payors of the fees."). As fees, the Tax Injunction Act does not bar this court from considering Devereaux's claims related to the storage and GIS fees.

The surcharge, however, fits into the definition of a tax as it is intended not to recover a cost imposed on the municipality for a related service but, rather, to generate revenue that the municipality uses to confer unrelated benefits to another segment of the population. *See Diginet, Inc.*, 958 F.2d at 1399. The surcharge is a classic tax, taking money from one group of people, those recording documents, and giving it to another group, those who may benefit from the Rental Housing Support Program. *See Empress Casino*, 2011 WL 2652201, at *6 (exaction in that case takes "money from one group of firms and giv[es] it to another group, in much the same way that federal income tax takes money from persons and firms mostly in the nonagricultural sector of the economy and Congress gives some of the tax revenues to the tiny but influential agricultural sector in the form of farm subsidies"). "That the revenue is earmarked for a particular purpose is hardly unusual," *id.* at *7, and does not remove the surcharge from the realm of taxes.

*See Arangold Corp.* v. *Zehnder*, 787 N.E.2d 786, 204 Ill. 2d 142, 272 Ill. Dec. 600 (2003) ("[M]any tax statutes in Illinois impose taxes on specific groups of taxpayers and earmark the proceeds for special funds."). The surcharge is thus properly characterized as a tax for purposes of the Tax Injunction Act.

This does not end the inquiry, though, as Devereaux claims that he does not have a "plain, speedy and efficient remedy" in state court. He argues that the fact that he must obtain leave to file a complaint that seeks to restrain or enjoin the disbursement of public funds by officers of the state government, 735 Ill. Comp. Stat. 5/11-303, is a procedural bar that violates his right to object to improper taxation. The requirement that the circuit court first determine that his suit is rooted in reasonable grounds and is not frivolous or malicious, *see Strat-O-Seal Mfg. Co.* v. *Scott*, 190 N.E.2d 312, 313, 27 Ill. 2d 563 (1963), does not deprive Devereaux of an efficient remedy in state court. Defendants question whether the provision even applies to Devereaux's claims. Without deciding that issue, the court is not convinced that the provision deprives Devereaux of fair access to the courts.[4] Thus, Devereaux's challenge to the surcharge must be brought in state court.

## II. Rule 12(b)(6)

As the court has jurisdiction over Devereaux's claims relating to the GIS and storage fees, it will consider defendants' arguments that Devereaux has failed to state a cognizable claim under § 1983. In Count II, Devereaux alleges that the GIS and storage fees are converted into general revenue by the Recorder and treated as such, although not

---

[4] Devereaux's claim that no similar provision exists for other state causes of action is incorrect. *See* 735 Ill. Comp. Stat. 5/2-622 (requiring a plaintiff filing a malpractice action to attach an affidavit from a health professional concluding that plaintiff has a meritorious claim); 735 Ill. Comp. Stat. 110/20 (in so-called SLAPP suits, in response to a motion to dismiss, a plaintiff must produce clear and convincing evidence that the acts complained of are not immunized from liability by the Citizen Participation Act in order to proceed).

authorized by the statute under which the fees are collected. He claims that this conversion constitutes a taking without due process of law.

To state a claim under § 1983, a plaintiff must allege that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) a person acting under color of state law caused this deprivation. *See Flagg Bros., Inc.* v. *Brooks*, 436 U.S. 149, 155–56, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978). Section 1983 is not a source of substantive rights but, rather, "a means for vindicating federal rights conferred elsewhere." *Ledford* v. *Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright* v. *Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).

Unfortunately for Devereaux, the alleged failure to comply with state law does not rise to the level of a constitutional violation. *River Park, Inc.* v. *City of Highland Park*, 23 F.3d 164, 166–67 (7th Cir. 1994) ("Failure to implement state law violates that state law, not the Constitution; the remedy lies in state court."); *Archie* v. *City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) ("[T]he violation of state law is not itself the violation of the Constitution."). As this court found in *Perkins* v. *County of Cook*, a similar case filed by the same plaintiff's counsel, "[a] refusal by government authorities to properly follow procedures set forth by state statute, for the handling and expenditure of fees earmarked for a specific purpose, is properly characterized as a potential violation of state law, not an infringement of constitutional rights." No. 09-CV-4930, 2010 WL 1334925, at *3 (N.D. Ill. Mar. 30, 2010). Devereaux has not alleged a cognizable

constitutional right that has been infringed by the allegedly improper conversion of the storage and GIS fees to general revenue. Count II will be dismissed.

### III. State Law Claims

With no remaining federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Groce* v. *Eli Lilly & Co*., 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The court also need not address defendants' argument that dismissal is compelled by Rule 12(b)(7) for failure to join a necessary party.

### CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss [#14] is granted. Devereaux's federal claims are dismissed with prejudice. His state law claims are dismissed without prejudice to refiling in state court. This case is terminated.

Dated: July 15, 2011            Enter: _____
                                JOAN HUMPHREY LEFKOW
                                United States District Judge